## OLIVER *vs.* CITY COUNCIL OF AMERICUS.

The charter of the city of Americus gives to the mayor and city council power to appoint police officers, to regulate their election, fees, bonds and duties, and to remove them from office for a breach, neglect or incapacity to discharge such duties, at their discretion. The city ordinances provided that policemen should be elected annually to serve for a year or until their successors should be elected and qualified, and that they might be fined or removed from office by the council for malpractice, incompetency, etc., of which the mayor and council should be the sole judges.   Another ordinance provided that the mayor and council should annually elect such policemen as they might deem necessary, who should serve during their pleasure, with power in them to increase or diminish the number, in their discretion :

Oliver *vs.* City Council of Americus.

*Held*, that for a malfeasance by a policeman, such as committing a battery upon a citizen with his billet, the municipal authorities might act either judicially by regular trial, or ministerially by suspending or discharging him. In the former case, their judgment would be conclusive on him; in the latter, it would not.

(*a.*) The court having erred in his charge on this point, a new trial was properly granted.

October 10, 1882.

Officers.    Municipal   Corporations.    Before   Judge CRISP.   Sumter Superior Court.   April Adjourned Term, 1882.

Oliver brought suit against the mayor, etc., of Americus to recover a balance of one year's salary as policeman alleged to be due him.   The evidence showed that he was duly elected in January, 1877, to serve in such capacity for one year ; that he qualified and properly discharged his duty until August 7th, 1877, on the evening of which date he, being off duty at the time, had an altercation with one Felder, in which he struck Felder with his billet, inflicting a serious wound.   Among the friends of the stricken man considerable excitement prevailed, and there was talk of violence toward Oliver.   The latter was advised by the mayor *pro tem.* to go to his home and thus avoid further trouble, which he did.   Subsequently the mayor *pro tem.* informed Oliver that he might consider himself relieved until the meeting of the council. When the council met, they confirmed this action.   Oliver was not called before the council to answer to any charges, and there was no investigation of his difficulty. The mayor told him that there would be none until the case was passed on by the superior court.   Two resolutions were passed by the council: the first on August 27th, 1877, confirming the action of the mayor, the second on November 5th, 1877, suspending Oliver as policeman.

Section 15 of the revised charter of Americus gives to the mayor and council power to appoint city officers,

regulate their election, establish their fees and salaries, take their bonds, prescribe their duties, and remove them from office for a breach, neglect or incapacity to discharge said duties, at their discretion.

Section 1 of the revised ordinances provides for the election of officers.

Section 3 provides that the council shall fix salaries of officers for the ensuing year ; that such officers shall serve for one year and until their successors are elected and qualified ; it also provides for the qualification of officers and for their removal by the council for a breach, neglect or incapacity to discharge the said duties, at their discretion.

Section 9 provides for the election of a mayor *pro tem.*

Section 12 gives the mayor control over the officers.

Section 24 provides for the annual election by ballot of such a number of policemen as may be deemed necessary to serve during the pleasure of the mayor and council, and with the power in the latter to increase or diminish the number, at their discretion.

(In this case a substitute was put in Oliver's place immediately upon his suspension.)

. Section 25 prescribes the oath of policemen.

Section 26 provides for their compensation.

Section 27 defines the duties of the marshal and po-. licemen.

The jury found for the plaintiff. The defendants moved for a new trial on the following among other grounds :

(1.) Because the court charged as follows : " I charge you that before they (the mayor and city council of Americus) could discharge the plaintiff, they must make a charge ; they must elect whatever charge they rely upon, and give notice to the officer, and let him have an opportunity to appear and defend himself. I know of no law that will permit a person who is an officer, and who is acting in that capacity, to be discharged and removed from office without any notice to him of the charge

against him. Therefore you will look to the evidence, and if you find that he had no notice of the charge pending against him, then I charge you that he would be entitled to recover."

(2.) Because the court charged as follows: " That the mayor and city council of Americus could not suspend him (plaintiff), and by that suspension relieve themselves of their contract with him, unless you find from the evidence that they have given some kind of notice and made some kind of charge against him."

(3.) Because the court refused to charge as follows : " The mayor and city council may discharge an officer for malpractice, incompetency, habitual intoxication, inefficiency, a breach, neglect or incapacity to discharge them, and they, the mayor and city council, are the sole judges in such cases. They cannot do this capriciously, but must exercise the discretion reasonably, and must act in good faith ; and if they, so acting, find that he is incapable to discharge his duties, incompetent, or inefficient as a policeman, they may discharge him. They may be mistaken in their conception of the law; it may be that under the same circumstances you would not have taken the same action that they did ; yet, if they acted honestly, and in good faith, and discharged him, then the plaintiff cannot recover in this case, because the officer accepted the office with the distinct understanding that they had this right.

The motion was sustained, and the plaintiff excepted.

GUERRY & SON; HINTON & MATTHEWS, for plaintiff in error.

HAWKINS & HAWKINS, for defendant.

JACKSON, Chief Justice.

A policeman of Americus knocked down a citizen with his official billet in a personal altercation wholly disconnected from the duties of his office; thereupon the

mayor *pro tem.* suspended him from office, and subsequently
the city council ratified this act of suspension. There was
no trial of the policeman after previous notice to him, but
the act of the mayor *pro tem.* was purely ministerial, and
the ratification of that act by the council was not in the
capacity of a court, but in that of administrative officers
of the city only. The policeman brought suit for his sal-
ary while so suspended; the jury found a verdict in his
favor; a motion was made for a new trial by the city, which
was granted, and the policeman excepted.

The controlling question is, whether, under the charter
and ordinances of the city of Americus, the mayor, as a
ministerial officer, may remove the policeman, and the
city council may ratify that act officially as council and
not sitting as a court, or whether it is necessary to try the
policeman on due notice to him before his suspension.

In 59 *Ga.*, page 318, a majority of this court held that
if a policeman was regularly tried on due notice to him,
the judgment rendered would conclude him, but the court
did not hold that the council might not act ministerially,
though there may be *obiter dicta* leaning to that opinion.
In 60 *Ga.*, 109, this court held that the clerk of council of the
city of Brunswick might be removed ministerially without
any trial, but of course that removal would not conclude
him on a suit for his wages. The two cases, construed
together, evidently mean that the city authorities may act
on such cases either ministerially or judicially; in the
latter case their decision would conclude the officer; in
the former it would not. The charter and ordinances of
Atlanta and of Brunswick which regulated the cases in
the 59th and 60th *Ga.* are not so broad in the grant of
powers to the city authorities over subordinate officers as
those of Americus, which are under consideration here.
It would seem that by the provisions of this charter and
these ordinances the continuance in office of policeman
for a longer or shorter period is within the discretion and
at the pleasure of the authorities of the city. And whilst

it may be that the ordinance which gives them the right to discharge a policeman at pleasure may stretch a little beyond the authority conferred by charter, yet it is perfectly clear that the mayor and city council may act ministerially and use their discretion in suspending or discharging a policeman before the termination of the year for which he was elected.

Therefore the court erred in charging the jury that a judicial trial was necessary before this policeman was discharged, and in refusing to charge substantially as requested by counsel for the city.

Indeed, it is essential to the administration of the laws of a city, and especially of its police government, that this discretion should be invested in police commissioners or in the mayor and city council. Where for any reason a policeman becomes inefficient, either from neglect of duty or from an imprudent exercise of power conferred upon him, he ought to be suspended or discharged, and especially ought this to be done when, made by law a conservator of the peace, he makes use of the authority of his office and the very weapons with which that office furnishes him in redressing his own private wrongs, by using them to shoot or knock down an opponent in a personal altercation not on the line of his official duty.

There was no error, therefore, in the grant of a new trial, and the judgment granting it to the city authorities must be affirmed.

Judgment affirmed.